FILED                      **C/M**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★     MAY 2 5 2010     ★

P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                         :

LUCY CHOW and JOHN CHOW,          :

                      Plaintiffs,      :      **MEMORANDUM**
                                         :      <u>**DECISION AND ORDER**</u>

         - against -            :

THE CITY OF NEW YORK and SAM     :     09-CV-1019 (BMC)(RLM)
ROSADO,                                :

                                           :

                      Defendants.     :

------------------------------------------------------- X

**COGAN**, District Judge.

       This case is before the Court on the objections of plaintiffs Lucy and John Chow (the "Chows") to Magistrate Judge Roanne L. Mann's March 12, 2010 Memorandum and Order (the "M&O"), which found good cause for Reibman & Weiner ("R&W") seeking relief as counsel and recommended enforcing their lien for costs (not fees) incurred in the amount of $1,158. A copy of the M&O is annexed hereto. R&W has moved for sanctions against the Chows, who have cross-moved for sanctions against their former attorneys. The M&O is adopted, the Chows' cross-motion for sanctions is denied, and R&W's motion for sanctions is granted.

       Although it is appropriate to provide *pro se* litigants with every reasonable accommodation, this indulgence does not extend to indulging repeated acts of perjury. As Judge Mann found, as the record amply demonstrates, and as is consistent with this Court's observations and consideration of plaintiffs' conduct, the Chows have lied to their own attorneys, lied in their sworn deposition testimony to defendants, and lied in sworn testimony before Judge

Mann. Although this case is likely too small to warrant the expenditure of prosecutorial resources by the United States Attorneys' Office, the fact remains that the perjury is blatant and material. The Federal Rules of Civil Procedure fortunately provide the Court with a mechanism to prevent plaintiffs from profiting through their misconduct.

## BACKGROUND

The facts of this matter are set forth in Judge Mann's detailed M&O and thus will not be repeated at length. The bottom line is that Judge Mann found that plaintiffs had deliberately concealed their prior arrests from their counsel before commencing this §1983 false arrest case, in part because they believed that disclosing the prior arrests would have caused their attorneys not to take the case. Defendants' lawyers had done their homework, however, and confronted plaintiffs with their arrest records after they took the position that they had never been arrested. R&W, taken aback by this disclosure, sought to withdraw from the case. I initially denied that application based on the Chows' assertion that they had been confused about their prior arrests, but ultimately granted a renewed application for withdrawal when the relationship between them and R&W became unsalvageable. Defendants then settled with the Chows for a total of $5,200, which defendants are continuing to hold pending disposition of this motion.

I asked Judge Mann to report on whether R&W had good cause to withdraw as counsel, such that they could enforce their attorneys' lien for the out-of-pocket costs that they had incurred. Before Judge Mann, the Chows abandoned the claim they made before me that they had not disclosed their prior arrest records because they were confused. Instead, they asserted that they had, in fact, told R&W of their prior arrests, and R&W had instructed them to lie and say they had never been arrested. Judge Mann's M&O thoroughly documents why that assertion

was preposterous; I will only emphasize that its implausibility is further demonstrated by their failure to mention it to me when R&W sought to withdraw because of the Chows' failure to tell them about their arrests.

## DISCUSSION

### A. Standard of Review

A district court judge may refer certain matters to a magistrate judge for a report and recommendation. See 28 U.S.C. §636(b)(1). If objections are timely filed, the district court must consider the issues raised therein *de novo*. Id. This *de novo* review neither requires the district court to "rehear the contested testimony" nor "conduct a new hearing on contested issues." United States v. Raddatz, 447 U.S. 667, 674-75 (1980). As the factfinder, the magistrate judge's credibility determinations are accorded deference. Groff v. Kyzmir, 101 F.3d 1392 (2d Cir. 1996). Accordingly, although the district court may accept the magistrate's credibility findings based on the written record, "a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." Cullen v. United States, 194 F.3d 401 (2d Cir. 1999); see Carrion v. Smith, 549 F.3d 583, 588-89 (2d Cir. 2008).

### B. Plaintiffs' Objections and Cross-Motion for Sanctions

The Chows' objections allege that Judge Mann was biased against them, conspired with R&W and Mr. Lumer, and improperly required them, as *pro se* litigants, to make legal arguments in support of their case. The Chows have also attacked the substance of Judge Mann's M&O, reiterating their arguments as to the impropriety of Mr. Lumer's actions. These arguments are identical to those the Chows raised before Judge Mann and accepting them would

require crediting the Chows' version of events, in which they allege that Mr. Lumer conspired against them, coached them to lie under oath, and withheld information about settlement offers in order to increase the fees he could wring out of their case. The Chows' objections and cross-motion for sanctions are essentially a broadside attack on Mr. Lumer and his firm, accusing him not only of misconduct in the handling of their §1983 lawsuit, but of presenting manufactured evidence before Judge Mann, making misrepresentations to them about the evidentiary hearing, and scheming against other clients.

## C. Analysis

### 1. Attorneys' Lien

I find the Chows' objections substantively meritless. They have supplemented the charges they made about Mr. Lumer and his firm to Judge Mann with new allegations about misconduct by Judge Mann, implying that her M&O was the result of a scheme against them. The gravamen of their objections to the M&O is that Judge Mann was, for some unknown reason, prejudiced against the Chows and conspired with Mr. Lumer against them. These allegations are baseless.

An attorney has good cause for withdrawal, as Judge Mann noted, when he has reason to believe his client's case is so much weaker than he initially thought that he cannot argue it in good faith, Vaughn v. Am. Tel. & Tel. Corp., 96-cv-0989, 1998 WL 760230, at *1 (S.D.N.Y. Oct. 30, 1998), in other words, when he believes that continuing the representation would require him to make frivolous arguments and a "legitimate prospect of Rule 11 sanctions comes into play." Foster v. City of New York, 96-cv-9271, 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000). The Chows' misrepresentations about their prior arrests gave Mr. Lumer reason to

believe their case very possibly was without any merit whatsoever, since it rested entirely on the Chows' credibility. Accordingly, R&W and Mr. Lumer are entitled to enforce their charging lien of $1,158 against the Chows' settlement. See Melnick v. Press, 06-cv-6686, 2009 WL 2824586, at *2-3 (E.D.N.Y. Aug. 28, 2009).

## 2. Sanctions

Whenever a litigant, including one proceeding *pro se*, makes a submission to the Court, he is certifying that, to the best of his knowledge, it is not for an improper purpose, presents non-frivolous legal arguments, and contains factual allegations supported by evidence. Fed. R. Civ. P. 11(b). Failure to comply with these requirements may be punished by sanctions, including monetary penalties. "In order to justify Rule 11 sanctions, it must appear that the lawyer or *pro se* litigant 'sign[ed] a pleading, motion, or other paper for an improper purpose ... or [did] so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law.'" Perry v. Fischer, 08-cv-602, 2010 WL 1235611, at *2 (N.D.N.Y. Mar. 2, 2010) (quoting Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)). Sanctions should only be imposed if the litigant's conduct was objectively unreasonable. Chien v. Skystar Bio Pharm. Co., 09-cv-149, 2009 U.S. Dist. LEXIS 71985, at *5 (D. Conn. Aug. 12, 2009) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)). "There is no empty-head pure-heart justification for patently frivolous arguments under Rule 11. The subjective intent of the filer is irrelevant." Id. at *5-6 (internal quotations omitted); see Knipe v. Skinner, 19 F.3d 72, 75 (2d. Cir. 1994) ("An attorney's good faith belief in his or her argument must be supported by an objectively reasonable inquiry into its viability.").

If these requirements are met, it is within the discretion of the district court to award sanctions, which should be designed to impose only those penalties necessary to deter repetition of the wrongful conduct. Margo, 213 F.3d at 64 (citing Fed. R. Civ. P. 11(c)(2)). When dealing with *pro se* litigants, against whom Rule 11 applies and sanctions are available, a court should proceed even more cautiously, "for ordinarily, *pro se* parties are held to much more lenient standards than attorneys." Chien, 2009 U.S. Dist. LEXIS 71985, at *8. In determining whether to sanction a *pro se* litigant, "the court may consider the special circumstances of litigants who are untutored in the law." Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989). "In general, courts have been more willing to sanction a *pro se* litigant where he or she has more familiarity or competence with the law, or has been put on notice as to the possibility of sanctions." Chien, 2009 U.S. Dist. LEXIS 71985, at *9 (collecting cases).

Finally, even if all of the substantive requirements are met and the district court concludes that sanctions are justified, they may only be imposed if the movant complies with Rule 11's procedural requirements. The party seeking sanctions must make a separate notice of his intent to do so, describe the specific conduct he believes violates the rule, and provide notice to the non-moving party at least 21 days before making the motion to the court. Fed. R. Civ. P. 11(c); see Perry, 2010 WL 1235611, at *4.

R&W has met the procedural safeguards of Rule 11. By letter dated March 3, 2010, R&W informed the Chows that it intended to seek Rule 11 sanctions if they continued to oppose paying its charging lien, and the letter further described the Chows' offending conduct. It was not until April 5, 2010, more than a month later, that R&W moved the Court for sanctions.

Turning to the merits, the Chows have raised frivolous claims at every turn. From the inception of this litigation, the Chows have dissembled at least and perjured themselves at most. The Chows testified at their depositions, for example, that neither had swiped their father's "senior" Metrocard and that they were arrested for trying to check the balance on it. This was false testimony, as evidence provided by defendants later showed that the card permitted unlimited use for one month, and it was contradicted by the fare card's history, which showed that it had been swiped immediately before the Chows were arrested.

When faced with this irreconcilable evidence, the Chows changed their story. Before Judge Mann, and in their objections to her M&O, the Chows attempted to explain the contradictions between their testimony and the evidence by pointing the finger at Mr. Lumer. At the hearing before Judge Mann, the Chows testified that John Chow had swiped the card and that Mr. Lumer had coached them to testify falsely at their depositions. All of this – the contradiction of sworn deposition testimony and the contradiction between all of the testimony and the evidence – creates serious doubt as to whether the claims underlying the Chows' §1983 lawsuit had any basis at all.

In their effort to protect their settlement from R&W's lien, the Chows have not only contradicted their own sworn deposition testimony but lobbed accusations against anyone, judge or lawyer, who arrives at a finding adverse to their interests. This is illustrated by their objections to Judge Mann's M&O and cross-motion for sanctions against R&W. The Chows' objections to the M&O and cross-motion for sanctions are both substantively meritless and contain additional, unfounded, allegations of misconduct by R&W and Judge Mann.

Finally, although the Chows are *pro se*, it is clear from their filings, which cite deposition transcripts, the case docket, filings in other cases, as well as the Model Rules of Professional Conduct, that they are not unsophisticated. This case, moreover, is not one that turns on complicated legal questions. The Chows' misconduct arises from their repeatedly perjurious testimony, contradictory statements, and unfounded allegations.

R&W, drawn into this mess based on the Chows' misstatements, has incurred additional attorneys' fees. It has documented over $11,000 in opposing the Chows' efforts. The Court finds that the $400 rate asserted by R&W for Mr. Lumer, the single attorney who worked on this matter, is reasonable and consistent with the rates of other attorneys of similar experience who practice in this district. See, e.g., Luca v. County of Nassau, 04-cv-4898, 2010 U.S. Dist. LEXIS 5867 (E.D.N.Y. Jan. 26, 2010); Morgenstern v. County of Nassau, 04-cv-58, 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009); Rodriguez v. Pressler & Pressler, LLP, 06-cv-5103, 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 16, 2009).

Nevertheless, the Court finds that the amount of time charged – 29.1 hours – is somewhat excessive. Although only one attorney from R&W has charged his time, approximately an hour of the total time was spent in conferences between R&W attorneys which, given the simplicity of this matter and the experience of the primary attorney handling the case, is more in the nature of overhead. In addition, another hour was spent on unsuccessful settlement discussions, which is an expense that R&W, as a claimant, must absorb. Finally, drafting and reviewing the various communications with the Court, slightly over 12 hours, could have been done somewhat more efficiently. Twenty-five hours, or $10,000 at the $400 per-hour rate, would reflect a more reasonable defensive effort against the Chows.

I am not going to award that full amount as sanctions against the Chows. They are con artists, but they are still *pro se* litigants and thus something less than the full force of the law should be sufficient to deter them from future conduct like this. In addition, while I do not fault R&W for being deceived, the assessment and assumption of client risk is something that is part of the business of being a lawyer, and Rule 11 should not be used too heavily as a means of limiting that risk lest it encourage lawyers to drop their guard. See, e.g., Vaughn, 1998 WL 760230, at *1 (explaining that although an attorney cannot withdraw merely because his client's case turns out to be weaker than he initially thought, he may be permitted to withdraw where he cannot continue the representation in good faith).

Pursuant to my adoption of Judge Mann's M&O, R&W is entitled to receive reimbursement of $1,158 in out-of-pocket costs from the $5,200 settlement fund. A further sanction of $4,042, the remainder of the fund, will ensure that the Chows do not profit from their misconduct, and will constitute some level of deterrence from deceiving others in the future. See Fed. R. Civ. P. 11(b)(4); Perry, 2010 WL 1235611, at *2 (noting that *pro se* litigant who had made false accusations in previous cases "resolved those issues" by returning the settlement he had been awarded). To further promote deterrence, and as an additional sanction, the Chows are ORDERED to serve a copy of this Order, including Judge Mann's M&O, on their adversary in any civil litigation in which either of them become a party for the next five years from the date of this Order.

Defendants are directed to pay the settlement fund to R&W, and file proof that they have done so, upon which they shall be deemed released and discharged from any further obligation to the Chows arising out of the incident alleged in the complaint.

## CONCLUSION

Magistrate Judge Mann's M&O is adopted in its entirety. The motion for sanctions against the Chows is granted and the cross-motion for sanctions against Mr. Lumer and R&W is denied.

**SO ORDERED.**



_____
U.S.D.J.

Dated: Brooklyn, New York
      May 25, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUCY CHOW and JOHN CHOW,

                          **Plaintiffs,**

        -against-

THE CITY OF NEW YORK and
SAM ROSADO,

                          **Defendants.**

------------------------------------------------------------x

                          **MEMORANDUM
AND ORDER**

                          **09-CV-1019 (BMC)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Currently pending before this Court, on a referral from the Honorable Brian M. Cogan,

is an application by Michael B. Lumer and the law firm of Reibman & Weiner, former counsel

to siblings Lucy Chow ("Ms. Chow") and John Chow ("Mr. Chow") (collectively, "the

Chows" or "plaintiffs"), to enforce a charging lien for costs in the amount of $1,158 against

$5,200 in settlement funds, which have not yet been disbursed by the defendant City of New

York.  Following an evidentiary hearing held on March 9, 2010, this Court ruled that Mr.

Lumer and his firm had good cause to move to be relieved as counsel to the Chows and that

therefore they had not forfeited their charging lien for costs.  The Court further noted that an

opinion would follow.  See Minute Entry (March 9, 2010), ECF Docket Entry ("D.E.") #48.

This Memorandum and Order constitutes that opinion.

## PROCEDURAL BACKGROUND

       On March 11, 2009, Mr. Lumer and his firm initiated this civil rights action on behalf

of the Chows, arising out of their allegedly wrongful arrest for theft of services on the morning

of March 18, 2006.  See Compl., D.E. #1.  The complaint alleges that on that date, plaintiffs

were arrested at a subway station for allegedly attempting to use their father's reduced fare

Metro card, when in fact all they had attempted to do was determine the balance on, and

possibly refill, that card. See id. ¶¶ 8-9.

On September 16, 2009, Mr. Lumer wrote to Judge Cogan, seeking permission to move

to be relieved as counsel. See Letter Motion for Pre-Motion Conference (Sept. 16, 2009), D.E.

#14. Two days later, Mr. Lumer filed an *ex parte* affidavit in support of that motion. See

Declaration of Counsel In Support of the Motion to Be Relieved (Sept. 18, 2009), D.E. #16.

The catalyst for Mr. Lumer's application was his recent discovery, through documents

produced to him by defense counsel, that John and Lucy Chow had been arrested together on

another occasion, i.e., on December 20, 2007, for criminal possession of stolen property and

petit larceny -- charges that were dismissed in February 2009, after plaintiffs accepted

Adjournments in Contemplation of Dismissal ("ACDs"). Id. ¶ 14. According to Mr. Lumer,

this information was contrary to the Chows' statements to him at their initial consultation,

contrary to the information they provided him in responding to defendants' interrogatories, and

contrary to their sworn deposition testimony, in which they denied having been arrested on any

other occasion. See id. ¶¶ 5, 11, 13.

In response to Mr. Lumer's application, Judge Cogan conducted an *ex parte* conference

with the Chows and Mr. Lumer on September 21, 2009. See September 21, 2009 Transcript

("9/21/09 Tr."). At that conference, Mr. Lumer expressed "Rule 11 concerns" about

continuing to represent the Chows. See id. at 5-6. In addition to the undisclosed arrests on

December 20, 2007, he cited newly acquired information about a prior arrest of Lucy Chow for

theft of services, and a lawsuit resulting from that additional arrest. See id. at 6, 8. These credibility concerns now made him question whether, contrary to the Chows' statements to him, his clients had in fact used their father's Metro card to "double[] up" and go through the subway turnstile, as charged by the police. See id. at 5, 8.

At the conclusion of the September 21st *in camera* proceeding, Judge Cogan denied Mr. Lumer's request to be relieved. See id. at 10. In doing so, he posited that perhaps the Chows had been told by prior counsel that their arrests would be "expunged," see id. at 5, and the judge thus identified "a plausible explanation as to why they didn't tell you about this history" of arrests. Id. at 6. On the basis of that assumption, Judge Cogan declined to allow Mr. Lumer to withdraw: "[I]f indeed they didn't deliberately lie to [counsel]," this "communication error" would not warrant "abandoning a client . . . ." Id. at 7. The Chows, who were present throughout this proceeding, did nothing to clarify the reason for their failure to have disclosed their other arrests.

Following the *in camera* proceeding, Judge Cogan conducted an order-to-show-cause hearing in response to defense counsel's September 14th motion to compel discovery. See generally Motion to Compel (Sept. 14, 2009), D.E. #13. At the conclusion of that hearing, Judge Cogan issued an order directing plaintiffs to serve executed releases for the unsealing of records relating to their arrest histories, as well as telephone records and an authorization for telephone records; he also ordered plaintiffs' father, Frank Chow, to appear for his deposition in two days -- i.e., on September 23, 2009, at 1:00 p.m. See Minute Order (Sept. 21, 2009).

On October 5, 2009, Mr. Lumer again wrote to Judge Cogan, requesting a pre-motion

3

conference and permission to renew his firm's motion to be relieved.  See Letter to Judge

Cogan from Michael Lumer (Oct. 5, 2009), D.E. #20.  He cited "the complete breakdown of

the attorney-client relationship" and his inability "to comply with outstanding orders and

deadlines."  Id.

The following day, the Chows wrote to Judge Cogan, complaining about Mr. Lumer's

failure to have promptly communicated to them the City's $2,000 Rule 68 offer of judgment,

and Mr. Lumer's "belligerent" attitude towards them.  See Letter to Judge Cogan from John

and Lucy Chow (Oct. 6, 2009), D.E. #21.  At a conference before Judge Cogan on October 13,

2009, Mr. Lumer expressed his belief that the case had no value, waived his right to fees, but

reserved his right to seek reimbursement for costs.  See October 13, 2009 Transcript

("10/13/09") Tr. at 2-6.  Although the Chows voiced their grievances regarding Mr. Lumer's

representation, they did not object to his withdrawal or respond to Judge Cogan's direct

question as to whether they consented to his application.  See id.  at 1-2, 6-10.  Judge Cogan

nonetheless granted the motion on the ground that "the relationship between client and attorney

is irretrievably broken . . . ."  Id. at 9.  Consistent with the rationale of Hallmark Capital Corp.

v. Red Rose Collection, Inc., No. 96-CV-2839 (RPP)(AJP), 1997 WL 661146, at *3

(S.D.N.Y. Oct. 21, 1997), Judge Cogan did not determine who was at fault, and thus "made no

ruling about entitlement to recovery of costs out of a potential settlement."  10/13/09 Tr. at 10.

Judge Cogan subsequently referred the case to the undersigned magistrate judge for all

non-dispositive pretrial matters.  See Referral Order (Oct. 23, 2010), D.E. #25.  Thereafter, the

parties filed various discovery-related requests, including defense counsel's motion to compel

the Chows (who were now proceeding *pro se*) to produce the releases previously ordered by Judge Cogan.  See Letter to the Court from Karl J. Ashanti (Nov. 13, 2009) at 2, D.E. #29.

On November 20, 2009, this Court conducted a conference to resolve the parties' discovery disputes.  At the conclusion of the proceeding, both sides agreed to settle the litigation for a payment of $2,600 to each plaintiff, inclusive of costs.  See Minute Entry (Nov. 20, 2009), D.E. #33.  After the parties filed their stipulation of discontinuance and the case was closed, see Stipulation of Discontinuance, D.E. #35, the Chows again wrote to Judge Cogan, objecting to Mr. Lumer's assertion of a charging lien for $1,158 in costs on the settlement proceeds.  See Letter to Judge Cogan from Lucy and John Chow (docketed Jan. 8, 2010), D.E. #36.  Judge Cogan referred their request to the undersigned magistrate judge.  See Order (Jan. 15, 2010), D.E. #37.

Following several telephone conferences and further submissions from Mr. Lumer and the Chows, the Court held an evidentiary hearing on March 9, 2010, to determine whether Mr. Lumer and his firm had good cause to terminate their representation of the Chows.  Prior to the taking of testimony, and again before the hearing concluded, Mr. Chow, on behalf of both plaintiffs, stated his "settlement" proposal on the record:  he and his sister would refrain from filing disciplinary charges against Mr. Lumer if Mr. Lumer agreed to waive his costs.  Mr. Lumer declined the offer.

The hearing testimony provided by Mr. Lumer was entirely credible and corroborated in significant part by documentary evidence.[1]  The Court credits his account of his discussions

---

[1]  Seven exhibits, marked Lumer Exhibits C through I ("Lumer Ex. [letter]") were admitted
(continued...)

with the Chows and his reasons for seeking to be relieved.  In contrast, John and Lucy Chow

each gave testimony that not only conflicted with Mr. Lumer's version of events, but that was

belied by contemporaneous documentation and circumstantial evidence.  Simply put, the Court

found their testimony to be patently perjurious in material respects.

## THE HEARING EVIDENCE

### I.  Mr. Lumer's Testimony and Exhibits

Mr. Lumer, a civil rights attorney admitted to practice in May 1996, first met the

Chows in February or March 2009, after Lucy Chow had contacted him -- shortly before the

expiration of the statute of limitations -- about representing her and her brother in connection

with their March 2006 arrests.  The Chow siblings met with Mr. Lumer at his office.  There

they explained that they had walked to a subway station near their home to ascertain the balance

on their father's "senior" Metro card; according to their story, the police officer who arrested

them falsely claimed that they had "doubled up" and gone through the turnstile using their

father's card.  John Chow ultimately accepted an ACD and the charges against Lucy Chow

were dismissed outright.

In response to specific questions from Mr. Lumer, the Chows assured him, in substance,

that this was their only brush with the law; apart from this incident, they had never been

arrested, handcuffed, or taken to a police precinct.  When asked why they had waited so long to

bring a lawsuit, they claimed that they had not realized that they could "do anything" about the

---

[1](...continued)
into evidence.

matter.[2]

On the basis of the information provided by the Chows, Mr. Lumer and his firm agreed to represent them, and they entered into retainer agreements. After the firm commenced litigation and caused the defendants to be served, Mr. Lumer spoke with the Chows in May 2009, in connection with his preparation of responses to the defendants' interrogatories. The Chows again confirmed that the arrests at issue were their only arrests. They later repeated these statements, under oath, at their depositions, in which they also described in detail the shame and humiliation that each allegedly suffered as a result of the March 2006 incident.

On August 31, 2009, defense counsel served Mr. Lumer with supplemental discovery, including documents reflecting that prior to their retention of Mr. Lumer's firm, both plaintiffs had been jointly arrested and charged with burglary. See Lumer Ex. E. Mr. Lumer telephoned the Chows and spoke first to Lucy, who continued to insist that she had never been arrested on any other occasion, even though Mr. Lumer made it clear that he was not limiting his question to arrests that resulted in convictions. Mr. Lumer then spoke with John Chow, who likewise falsely denied having been arrested at any other time. At some point in the conversation, Mr. Chow admitted that he had been the subject of another arrest, but he told Mr. Lumer that his lawyer had assured him that because of the disposition of the charge, it was "as if it never

---

[2] Mr. Lumer's account of the Chows' statements to him is entirely consistent with his contemporaneous notes of that meeting. See Lumer Ex. I. The Chows suggested that the notes were a recent fabrication. Significantly, however, Mr. Lumer did not offer his notes as corroboration. Rather, after the Chows testified, the Court inquired of Mr. Lumer whether he had taken notes of the meeting and whether he had them with him in his file. Only then did he produce the notes, which reflect, among other things: "DID NO[T] GO THRU TURNSTYLE" [sic], "LC . . . never arrested," "JC . . . arrested: never." Lumer Ex. I.

that if he and his sister had revealed that information earlier, Mr. Lumer "wouldn't have taken the case."

Understandably disturbed by these revelations, Mr. Lumer and his firm began to consider whether to move to withdraw from the case. They disbelieved the Chows' "innocent" explanation for their misstatements, and felt that plaintiffs had intentionally concealed their prior arrests. They now had serious concerns about the veracity of the Chows' account of the events surrounding their March 2006 arrests.

In the meantime, defendants moved for an order to compel the deposition of the Chows' father, Frank Chow, and the production of authorizations relating, among other things, to plaintiffs' criminal histories[3] and phone records. On September 14, 2009, after Judge Cogan issued an order to show cause, Mr. Lumer responded to the City's motion and also indicated his firm's intention to move to withdraw. Several days later, Mr. Lumer filed an *ex parte* application explaining his concerns about his continued representation of plaintiffs, and he served copies on the Chows. At the conference before Judge Cogan on September 21, 2009, Judge Cogan denied Mr. Lumer's application to withdraw, directed the Chows to execute and serve the demanded authorizations, and ordered Frank Chow to appear for deposition on September 23, at 1:00 p.m.

---

[3] Defendants' motion to compel noted that Lucy Chow had been arrested on yet another occasion, for improperly using her mother's disability card, and had initiated and settled a corresponding civil rights action in the Southern District of New York. See Motion to Compel (Sept. 14, 2010) at 2, D.E. #13; see also Lumer Ex. F (S.D.N.Y. complaint and stipulation of discontinuance).

8

The following evening, at 8:42 p.m., defense counsel emailed Mr. Lumer and communicated Rule 68 offers of judgment of $1,001 plus attorney's fees for each plaintiff. See Lumer Ex. J.[4] The next day, in the waiting room at defense counsel's office, Mr. Lumer met with the Chows and their father at around 12:45 p.m. or 12:50 p.m. While waiting for the deposition to begin, Mr. Lumer discussed the upcoming examination with Frank Chow. He did not speak with plaintiffs about the Rule 68 offers until after Frank Chow's deposition was completed. In his hearing testimony, Mr. Lumer cited two plausible reasons for deferring that discussion until later in the day: First, given that the court-ordered deposition was scheduled to begin at 1:00 p.m., he did not believe that he had sufficient time to provide an uninterrupted (and somewhat complicated) explanation of the ramifications of such an offer.[5] Second, because Judge Cogan had ordered that the deposition be conducted that afternoon, Mr. Lumer felt that it would not be appropriate to adjourn it while settlement efforts proceeded.

About 4:00 or 5:00 p.m., after the Frank Chow deposition concluded, Mr. Lumer advised plaintiffs about the Rule 68 offers and the legal implications of those offers. He also told them that he believed that their case had no value and that he did not feel comfortable going forward with the litigation. Plaintiffs responded that they wanted to think about the Rule 68 offers.

After cancelling an earlier meeting with counsel, plaintiffs and Frank Chow appeared at

---

[4] Although Lumer Exhibit J references only the Rule 68 offer of judgment as to Lucy Chow, it is undisputed that defendants made a similar offer as to John Chow.

[5] As it turned out, defense counsel did not commence the deposition until shortly before 2:00 p.m. However, Mr. Lumer had no advance notice as to the delay, and did not want to begin his Rule 68 discussion and have it abruptly aborted by the appearance of defense counsel.

Mr. Lumer's office on September 30, 2009, and said they would accept a total of $3,000 to settle the case -- $1,000 for each plaintiff and $1,000 for their father, for having been subjected to a deposition. Because of his concerns about the Chows' credibility, Mr. Lumer did not want to initiate settlement discussions with the City absent written authorization from the Chows. He therefore prepared a document confirming that they had authorized him to settle the case for $3,000. See Lumer Ex. H.[6] They refused to sign it. He then advised them that, if they wanted to pursue their claims, they would have to sign the authorizations that Judge Cogan had previously ordered them to produce. They replied that they would not sign anything that he presented to them, and they disclosed that they had already communicated with Judge Cogan, who they said knew nothing about the Rule 68 offers of judgment.

The meeting ended. Mr. Lumer thereafter applied for a pre-motion conference and permission to renew his firm's motion to be relieved. The firm agreed to waive its fees, but expressly declined to waive its costs, which aggregated $1,158: to wit, the court filing fee of $350; service costs of $110 (Lumer Ex. C); deposition transcript cost of $663 (Lumer Ex. D); and postage and UPS costs of $35.

## II. The Chows' Testimony

John and Lucy Chow testified at the hearing, and each provided similar -- and similarly incredible -- testimony that was refuted by the testimony of Michael Lumer and the documentary evidence introduced at the hearing. They each claimed that when they first met

---

[6] At the hearing, both Chows falsely claimed that at the September 30th meeting, Mr. Lumer had insisted that they settle for $2,000, and had presented them with a document authorizing him to settle for $2,000, with a notation of "$3,000" on the reverse side.

responded "no," adding that "this case is worth nothing." Mr. Lumer then went to the bathroom, and his clients could hear him "yelling and screaming" on his cellphone about getting more fees; they could tell that he was talking with defense counsel, because both attorneys then appeared in the waiting room and, following the deposition, the two men were talking and laughing together in a suspicious manner.

On September 29, 2009, after Mr. Lumer advised them of and urged them to accept the City's offer to pay each $1,000 plus fees, the Chows traveled to the courthouse and expressed to Judge Cogan's clerk their concern that Mr. Lumer was acting unethically. The clerk checked his computer and saw nothing to indicate a settlement offer. He suggested that plaintiffs write to the judge.

The following day, the Chows met with Mr. Lumer, who they claim insisted that they settle for $2,000, "flew into a rage" when they refused, and called them "imbeciles." He "might have" "mumbled" something about signing other papers. When the Chows revealed that they had talked with Judge Cogan's clerk, Mr. Lumer and his partner threw them out of the office.

## DISCUSSION

As demonstrated by the credible evidence adduced at the hearing, Mr. Lumer and his firm were amply justified in seeking to be relieved of their representation of the Chows. First, they had well-founded concerns that their clients had intentionally lied to them, had perjured themselves in their deposition testimony, and were advancing baseless claims founded on a fabricated account of the events surrounding their arrests. Second, by the time Mr. Lumer renewed his request to be relieved, the Chows had made clear that they would not execute the

12

authorizations that Judge Cogan had ordered them to produce, nor would they otherwise cooperate with Mr. Lumer and his firm.  The termination of the attorney-client relationship thus was the product of misconduct by the Chows, not by counsel.  Accordingly, as discussed below, Mr. Lumer did not forfeit his charging lien for costs.

### A.  Governing Legal Principles

"New York Judiciary Law § 475. . . governs attorneys' charging liens in federal courts sitting in New York." Itar-Tass Russian New Agency v. Russian Kurier, Inc., 140 F.3d 442, 448-49 (2d Cir. 1998) (citing cases).  "[T]he Second Circuit has 'long recognized that the lien created by section 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts." Id. at 449 (collecting cases and quoting In re Chesley v. Union Carbide Corp., 927 F.2d 60, 67 (2d Cir. 1991)).  Section 475 reads in pertinent part:

> From the commencement of an action, . . . in any court . . ., the attorney who appears for a party has a lien upon his client's cause of action, . . . which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475.

"[A]ttorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'" Melnick v. Press, No. 06-CV-6686 (JFB)(ARL), 2009 WL 2824586, at *2 (E.D.N.Y. Aug. 28, 2009) (collecting cases).  In fact, New York's highest court has declared that "where an attorney's representation terminates and there has been no misconduct, no discharge for just cause and no unjustified abandonment by the attorney, the

attorney's right to enforce the statutory charging lien is preserved . . . ." <u>Klein v. Eubank</u>, 87

N.Y.2d 459, 464 (1996). Federal courts in this circuit have adhered to that principle:

> Where there is no evidence of misconduct, no discharge for cause, and no "abandonment" by the attorney, the New York Court of Appeals has held that "[a] rule making the charging lien unavailable to attorneys who voluntarily withdraw would introduce a strong economic deterrent" to the amicable settlement of these fee disputes and "rather than encouraging attorneys to bow out graciously," the rule would provide an incentive to the attorney to stay on in order to protect his right to fees.

<u>Louima v. City of New York</u>, No. 98-CV-5083 (SJ), 2004 WL 2359943, at *60 (E.D.N.Y.

Oct. 18, 2004) (quoting <u>Klein</u>, 87 N.Y.2d at 463-64); <u>accord</u> <u>Lansky v. Easow</u>, 756 N.Y.S.2d

885, 885-886 (2d Dep't 2003) (reversing trial court's conclusion that attorney withdrew without

sufficient cause).

"A hearing is required to determine if [an attorney] was discharged for cause . . . ."

<u>Mason v. City of New York</u>, 889 N.Y.S.2d 24, 25 (1st Dep't 2009). In that connection, "[t]he

burden of proving that a termination is for cause is on the client." <u>Cruz v. Olympia Trails Bus</u>

<u>Co.</u>, No. 99 Civ. 10861 (JSR)(HBP), 2003 WL 342278, at *3 (S.D.N.Y. Feb. 14, 2003) (citing

<u>Casper v. Lew Lieberbaum & Co.</u>, No. 97 Civ. 3016 (JGK)(RLE), 1999 WL 335334, at *6

(S.D.N.Y. May 26, 1999)), <u>vacated on other grounds</u>, <u>Budin, Reisman, Kupferberg &</u>

<u>Bernstein, LLP. v. Law Offices of Rosemarie Arnold</u>, 79 F.App'x 460 (2d Cir. 2003).

**B. Good Cause**

In this case, regardless of who hears the burden of proof, the Court concludes that Mr.

Lumer and his firm acted entirely properly and with ample justification in seeking to withdraw

from the case. In New York, counsel's ethical obligations are set forth in the Rules of

14

Professional Conduct and its predecessor, the Model Code of Professional Responsibility.[9] Although each of those codes "was drafted solely for its use in disciplinary proceedings and cannot by itself serve as a basis for granting a motion to withdraw as counsel," the Second Circuit has stated that they "provides guidance for the court as to what constitutes 'good cause' to grant leave to withdraw as counsel." Whiting v. Lacara, 187 F.3d 317, 321(2d Cir. 1999); accord Joseph Brenner Assocs. v. Starmaker Entm't, Inc., 82 F.3d 55, 57 (2d Cir. 1996) (citing New York's implementation of the Model Code in affirming district court's decision granting counsel's withdrawal motion); DeFlumer v. LeSchack & Grodensky, P.C., No. 99-CV-1650(NAM/DRH), 2000 WL 654608, at *1 (N.D.N.Y. May 19, 2000) ("[A]n attorney's withdrawal from representation of a client is governed by the American Bar Association Model Code of Professional Responsibility"); Brown v. Nat'l Survival Games, Inc., No. 91-CV-221, 1994 WL 660533, at *4 n.1 (N.D.N.Y. Nov. 18, 1994) (citing Armstrong v. McAlpin, 625 F.2d 433, 446 n.26 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106 (1981)).

The Chows would have this Court believe that Mr. Lumer sought to withdraw because plaintiffs refused to accept defendants' Rule 68 offers and because they complained to Judge Cogan about his alleged misconduct. To be sure, "[u]nder New York law, the refusal of a client to accept a settlement offer is not good and sufficient cause for the withdrawal of the attorney." Cosgrove v. Federal Home Loan Bank, 90 Civ. 6455 & 92 Civ. 4225, 1995 WL

---

[9] See 22 N.Y. Comp. Codes R. & Regs. tit. 22, § 603.2 (defining "professional misconduct" in conformity with Rules of Professional Conduct with respect to conduct on or after April 2, 2009, and in conformity with the disciplinary rules of the former Code of Professional Responsibility, with respect to conduct on or before March 31, 2009).

600565 at *2 (S.D.N.Y. Oct.12, 1995); accord Marrero v. Christiano, 575 F.Supp. 837, 839

(S.D.N.Y. 1983). Similarly, "the fact that a lawsuit is of questionable liability, limited

damages, and a likely unfavorable trial result is not the type of impairment of the attorney-client

relationship that permits withdrawal of counsel." Countryman v. Watertown Hous. Auth., 820

N.Y.S.2d 757 (Sup. Ct. Jefferson County 2006).  Nevertheless, as a matter of fact, the Court

rejects the Chows' attribution of an improper motive to counsel's request to be relieved.[10]

Furthermore, courts have distinguished between withdrawals based on counsel's assessment that

the client is unlikely to prevail and those based on counsel's belief that the claims are baseless:

> [C]ounsel should not be relieved merely because he believes his
> client's case is weaker than he had thought when he took the case
> in the first place. The possibility that a client's case appears less
> meritorious during the litigation is a risk that an attorney takes
> when he agrees to represent the client. Still, an attorney may be
> entitled to withdraw if he believes that his client's case is so
> lacking in merit that he cannot, in good faith, present the client's
> case to the court.

Vaughn v. Am. Tel. & Tel. Corp., No., 96 Civ.0989(LAK), 1998 WL 760230, at *1

(S.D.N.Y. Oct. 30, 1998) (collecting cases) (granting motion to be relieved).

        Consistent with this principle, in Foster v. City of New York, No. 96 Civ. 9271(PKL),

2000 WL 145927 (S.D.N.Y. Feb. 07, 2000), the court found good cause for counsel's

withdrawal where "requiring [counsel] to oppose defendant's motion would force him to

advance arguments before this Court that he believes are frivolous." Id. at *4.  The court

agreed that "[a]n attorney should be permitted to withdraw if he believes his client's case is so

lacking in merit that he cannot present it in good faith." Id.  "Once a legitimate prospect of

---

[10] Notably, the firm first sought to be relieved *before* the City's Rule 68 offers of judgment.

Rule 11 sanctions comes into play, leave to withdraw must be granted." Id.

Here, as in Foster, counsel's sincere and well-founded concern about Rule 11 sanctions established good cause for the firm's withdrawal. The Chows had concealed from counsel information about their criminal records and litigation history, and had acknowledged their belief that the firm would have declined their representation had they disclosed those facts. The firm was thus justified in questioning the credibility of the Chows' account of the facts surrounding their arrests.

Furthermore, the Chows' subsequent refusal to execute the authorizations ordered by Judge Cogan constituted yet another basis for the firm to withdraw. "[T]he Code of Professional Responsibility advises counsel to withdraw from representation where the client's conduct makes effective representation unreasonably difficult." Furlow v. City of New York, 90 Civ. 3956, 1993 WL 88260 at *2 (S.D.N.Y. March 22, 1993). In addition, plaintiffs' unjustified complaints to Judge Cogan's staff about Mr. Lumer's alleged misconduct compounded the firm's difficulties in continuing to represent them.[11] The law is clear that where there has been a breach of trust on the part of the client or a challenge to the attorney's loyalty, the attorney should be permitted to withdraw. See Hunkins v. Lake Placid Vacation Corp., 508 N.Y.S.2d 335, 337 (3d Dep't 1986); In re Meyers, 120 B.R. 751, 752 n.2 (Bankr. S.D.N.Y. 1990).

Simply put, the blame for the breakdown in the attorney-client relationship lies squarely

---

[11] Having heard the testimony and observed the witnesses at the hearing, the Court is convinced that the Chows, who knew of Mr. Lumer's desire to be relieved and Judge Cogan's comments at the September 21st ex parte hearing, orchestrated the trip to the courthouse as a pre-emptive strike to prevent Mr. Lumer's firm from enforcing its lien.

with the Chows and their own misconduct, perjury, and other manipulations. Therefore, Mr. Lumer and his firm in no way forfeited their charging lien for costs reasonably and actually incurred, in the amount of $1,158.

### CONCLUSION

For the foregoing reasons, the Court rules that Mr. Lumer and his firm are entitled to enforce their charging lien for $1,158 against the settlement proceeds.

Any objection to the recommendations contained in this Memorandum and Order must be filed with the Honorable Brian M. Cogan on or before **March 29, 2010**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.

The Clerk is directed to enter this Memorandum and Order into the ECF system and to transmit copies, via Federal Express, to Mr. Lumer and each of the Chows.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
         **March 12, 2010**

                    **ROANNE L. MANN**
                    **UNITED STATES MAGISTRATE JUDGE**

18